## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **26-CR-98-TNM** |
| COLE TOMAS ALLEN | : | |

### MOTION TO DISQUALIFY UNITED STATES ATTORNEY, ET AL.

Cole Tomas Allen, through undersigned counsel, respectfully requests this Honorable Court find that the United States Attorney for the District of Columbia and members of the Department of Justice are disqualified from the prosecution of this case.  In support of this motion, counsel state the following:

### Introduction

"This one hits a little differently.  We were all there."

- Federal Bureau of Investigation Director Kash Patel, at a press conference with U.S. Attorney Pirro and Acting Attorney General Todd Blanche, discussing their roles as witnesses to and potential victims of the April 25, 2026 incident.

According to the prosecution's allegations, on April 25, 2026, Mr. Cole Allen was stopped by U.S. Secret Service at the Washington Hilton Hotel, armed with a 12-gauge pump action shotgun, six knives, and a .38 caliber pistol loaded with nine rounds of ammunition.  He is also alleged to have had two extra magazines of ammunition and 16 additional shotgun cartridges on his person.  Prosecutors have characterized these actions as creating the potential for a "mass shooting inside a room full of the highest-ranking officials in the U.S. government."  ECF No. 10 at 14.

At least two of those very same high-ranking officials are now responsible for making the unbiased and dispassionate discretionary decisions that the justice

1

system requires.  These include approving the charges and corresponding penalties Mr. Allen faces, any plea offer he would be extended, and a detached assessment of his personal history and characteristics.

Although the evidence of Mr. Allen's intent is far from clear based on the evidence disclosed to the public, the prosecution—primarily through media appearances (no discovery has yet been provided to the defense)—has provided every indication that it will charge Mr. Allen with numerous counts alleging that he intended to harm Administration officials present at the Washington Hilton Hotel on the evening of April 25, 2026.

Relevant to this motion are Department of Justice employees, U.S. Attorney for the District of Columbia Jeannine Pirro and Acting Attorney General Todd Blanche, both of whom were present at the scene during the alleged incident.  Both individuals have made statements indicating that they were witnesses to events at the Washington Hilton that evening.  Both stated that they heard gunshots and saw the reaction of the Secret Service to those gunshots. In addition, both individuals are "high ranking members of the U.S. government" and Administration officials.

Moreover, these individuals may well be named complainants, or at least purported victims or witnesses of offenses that constitute relevant conduct.  In its initial press conference, the Department of Justice noted that the Plaint Text (.txt) file allegedly sent by Mr. Allen stated in part: "make no mistake, he says 'targeting administration officials.'"  In the same press conference, U.S. Attorney Pirro said, "[W]e will prosecute you to the fullest extent of the law."  The government has not

ruled out charging Mr. Allen with offenses against any members of the Administration, including Ms. Pirro or Mr. Blanche.

Finally, Ms. Pirro has identified President Trump as the primary alleged victim of Mr. Allen.   Ms. Pirro and President Trump have a well-document relationship for over three decades.  *The Judge Who Speaks Trump's Language*, Washington Post (June 23, 2019),  https://www.washingtonpost.com/graphics/2019/politics/jeanine-pirro-the-judge-who-speaks-trumps-language/.   In fact, "Pirro's connection to Trump is one of his most enduring friendships."  *Id.*

### Applicable Law

Our system of justice vests a "breadth of discretion" in prosecuting attorneys. *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *see United States v. Heldt*, 668 F.2d 1238, 1275–76 (D.C. Cir. 1981).  To guard against the unavoidable potential for individual and institutional abuse, prosecutors must endeavor to be "disinterested" in the outcomes of the cases they oversee.  *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987).  In particular, the United States Attorney, as "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation" is to govern impartially, must endeavor "not that it shall win a case, but that justice shall be done."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  United States Attorneys must, therefore, "adhere to the highest standards of professional behavior . . . to be worthy of public trust and confidence."  *United States v. Johnston*, 690 F.2d 638, 643 (7th Cir. 1982).

To that end, 28 U.S.C. § 528 requires that the Attorney General

promulgate rules and regulations which require disqualification of any officer or employee of the Department of Justice, including a United States attorney or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof.

Further, DOJ regulations provide that "no employee shall participate in a criminal investigation or prosecution if he has a personal . . . relationship with . . . [a]ny person or organization substantially involved in the conduct that is the subject of the investigation or prosecution."[1]  28 C.F.R. § 45.2(a)(1).  This mandate ensures that DOJ employees do not participate in cases where the proscribed relationship has "the effect of rendering the employee's service less than fully impartial and professional" or "create[s] an appearance of a conflict of interest likely to affect the public perception of the integrity of the investigation or prosecution." *Id.* § 45.2(b)(1)– (2).  Indeed, the DOJ manual directs U.S. Attorneys to recuse "where a conflict of interest exists or there is an appearance of a loss of impartiality."  U.S. Dep't of Just., Just. Manual § 3-1.140 (2018); *see* Model Code of Professional Responsibility Canon 9 (1980) ("a lawyer should avoid even the appearance of professional impropriety").[2]

In instances where a prosecution or investigation would present a conflict of interest for an entire U.S. Attorney's Office, DOJ Guidance contemplates it may well

---

[1]     A "personal relationship" is defined as "a close and substantial connection of the type normally viewed as likely to induce partiality."  28 C.F.R. § 45.2(c)(2).

[2]     While evidence of bad faith or misconduct are not required to disqualify a Department of Justice employee, such evidence would necessitate the employee's recusal. *See United States v. Kember*, 685 F.2d 451, 458 (D.C. Cir. 1982).

be appropriate to recuse the "entire office." U.S. Dep't of Just., Just. Manual § 3-1.140 (2018). U.S. Attorney's Offices have indeed taken this route proactively to shield against potentially inappropriate prosecutions—or the appearance of such prosecutions. *See, e.g., United States v. Jeffress*, 2023-CF1-6998 (D.C. Sup. Ct. 2024) (U.S. Attorney's Office for the District of Columbia recused itself because of potential conflict of interest from defendant's criminal defense work in jurisdiction). Moreover, federal law allows the Attorney General to appoint a special counsel to assume responsibility for a matter where "[t]hat investigation or prosecution of that person or matter by a United States Attorney's Office . . . would present a conflict of interest." 28 C.F.R. § 600.1; *see* 28 U.S.C. § 543. Prior Departments of Justice have utilized this solution to protect against the appearance of impropriety. For example, the Attorney General appointed a Special Counsel pursuant to 28 U.S.C. §§ 509, 510, 515, and 533 in proceedings involving the President's son. U.S. DEP'T OF JUST., Order No. 5730-2023 (available at https://www.justice.gov/archives/sco-weiss).[3]

---

[3]    Counsel notes its concern that this Department of Justice—which has been hemorrhaging attorneys since 2025, while at the same time subjecting new candidates to a "Trump loyalty test"—may be operating under a different set of rules than the ones captured by prior practice and in the case law. *See* Ellen Nakashima & Warren P. Strobel, *U.S. Intelligence, Law Enforcement Candidates Face Trump Loyalty Test*, Washington Post (Feb. 9, 2025), https://www.washingtonpost.com/national-security/2025/02/08/trump-administration-job-candidates-loyalty-screening/ ("Political fealty has been a prerequisite for positions at all levels of the new administration, including for current civil servants seeking new assignments."); FOX 5 Washington DC, *Jeannine Pirro Shares that U.S. Attorney's Office in DC is Understaffed*, at 1:10 (YouTube, Aug. 13, 2025), https://www.youtube.com/watch?v=_dDLL_4BfP4 (recounting need to hire 90 prosecutors in the U.S. Attorney's Office for the District of Columbia after predecessor fired over a dozen prosecutors who were assigned to work on January 6 cases); Ryan Lucas, *70% of the DOJ's Civil Rights Division Lawyers are Leaving Because of*

Where prosecutors have failed to proactively recuse, courts have acted upon their inherent power to disqualify prosecutors whose participation would undermine confidence in the integrity of the proceedings. *See Young*, 481 U.S. at 810. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). To effectuate that goal, federal courts may act upon their inherent power to "preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted).

## Argument

Though disqualification of prosecutors from participation in cases is uncommon, courts have done so where the appearance of partiality was clear. *See, e.g., Young*, 481 U.S. at 807 (finding conflict of interest where prosecutor represented another party); *United States v. Schell*, 775 F.2d 559, 566 (4th Cir. 1985) (disqualifying attorney who joined in criminal prosecution of defendant with respect to identical matter about which attorney originally counseled client). A DOJ employee must recuse where he or she is a participant in the events alleged in the indictment, particularly where they are an alleged victim of said events. For example, the Ninth Circuit held that where a U.S. Attorney "was a witness to, and indeed a participant in, some aspect of all of the events alleged in the indictment,"

---

*Trump's Reshaping*, NPR (May 19, 2025), https://www.npr.org/2025/05/19/g-s1-66906/trump-civil-rights-justice-exodus.

the district court abused its discretion "in refusing to recuse the participating prosecutor." *United States v. Prantil*, 764 F.2d 548, 551, 557 (9th Cir. 1985).

Here, there is—at the very least—the appearance of partiality that necessitates the recusal of U.S. Attorney Pirro and Acting AG Blanche. Both heard gunshots, which presumably forced them to duck below the tables with the rest of the occupants. They were quickly evacuated. Shortly thereafter, they learned that law enforcement believed the target was certain administration officials.

It is the government's theory that Mr. Allen's alleged conduct "risked the lives of hundreds of people" attending the White House Correspondents' Dinner. ECF 10 at 13. And it is the government that alleges that had Mr. Allen been "successful," he could have "destabilized the entire federal government, given the number of high-ranking government officials"—including U.S. Attorney Pirro and Acting A.G. Blanche. Their active involvement in the prosecution of Mr. Allen therefore creates grave concerns about whether they are making prosecutorial decisions as representatives of the government or as witnesses.

U.S. Attorney Pirro has made several media appearances since April 25, 2026 and has referenced her status as a potential victim. Within about thirty minutes after the events unfolded, she was on social media describing the incident. She posted a video stating, "I've been taken out of the ballroom after the sounds of shots fired." U.S. Attorney Pirro (@USAttyPirro), X (Apr. 25, 2026, at 20:57 ET), https://x.com/USAttyPirro/status/2048204838215807487?s=20. Two days later, on April 27, 2026, she gave a press conference alleging that Mr. Allen was attempting to

"bring down as many of the high-ranking Cabinet officials as he could." FORBES BREAKING NEWS, *"Cole Allen's Journey of Accountability in the Criminal Justice System Starts Today": Jeanine Pirro*, at 40:00 (YOUTUBE, Apr. 27, 2026), https://www.youtube.com/watch?v=NYQosj6qlQA.    Later that day, she spoke to Laura Ingraham and discussed being "in that room" and hoped that reporters now understood the "sense of what it feels like now to be hunted." FOX NEWS, *Jeanine Pirro Says WHCA Dinner Shooter Suspect Wanted to "Kill the President,"* at 2:40 (Apr. 27, 2026), https://www.foxnews.com/video/6394031463112.    On May 2, 2026, she alleged on Fox News that "That man had every intention of killing, whomever was necessary in order to kill the President of the United States and his Cabinet." FOX NEWS, *Jeanine Pirro: There are People "Applauding" the WHCA Dinner Suspect*, at 3:25 (May 2, 2026), https://www.foxnews.com/video/6394459804112.    In the same interview, while discussing the perspective of journalists, U.S. Attorney Pirro described the unique experience of being in the room as a potential target or collateral damage: "I was in the line of fire here.  I could have been killed . . . .  It's kind of what people say to protect themselves from being and feeling vulnerable, they say, 'well, it happened to someone else.'  No, it almost happened to you . . . .  He's willing to kill you to get to him." *Id.* at 6:18.  On May 3, 2026, she brought up the point again with Jake Tapper alleging that Mr. Allen would have shot "anyone who was in the line of fire." CNN, *US Attorney Jeanine Pirro Shares New Details on Alleged Press Dinner Shooter*, at 1:20 (May 3, 2026), https://www.cnn.com/2026/05/03/politics/video/us-

attorney-dc-pirro-whcd-shooter-suspect-bullets.  She noted that she and Tapper were both in "the combat zone" when speaking with him on CNN's State of the Union.  *Id.*

And on May 4, 2026, U.S. Attorney Pirro commented disapprovingly on this case, not from her official government account, but from her *personal* X account.  *See* Jeanine Pirro (@JudgeJeanine), X (May 4, 2026, at 16:31 ET), https://x.com/JudgeJeanine/status/2051399246776021500?s=20 (stating that the presiding magistrate judge "believes [Mr. Allen] . . . is entitled to preferential treatment in his confinement compared to every other defendant").  The U.S. Attorney's emotional response was inflammatory, inappropriate, and inaccurate, particularly in light of the magistrate judge's concerns that Mr. Allen had been "treated differently than anyone [he'd] ever observed." Holmes Lybrand, *Judge Compares Jail Treatment of Press Dinner Gunman to US Capitol Rioters*, CNN (May 4, 2026), https://www.cnn.com/2026/05/04/politics/cole-allen-gunman-jail-conditions-january-6.  The U.S. Attorney's attack on the presiding magistrate judge for fulfilling his duties to ensure minimally humane conditions demonstrates the depths of her personal interest in this case.

The U.S. Attorney is not alone in making prejudicial statements to the public. On April 26, 2026, Acting A.G. Blanche said on CBS News that it appeared that "[Mr. Allen] was targeting members of the administration."  Face the Nation, *Blanche Says Authorities Believe Correspondents' Dinner Suspect Was Targeting Administration*, at 1:20 (YouTube, Apr. 26, 2026), https://www.youtube.com/watch?v=rabbLlevpdQ.

And he gestured to his status as a potential target, saying, "If one of [Mr. Allen's] goals was to get us to be scared, he failed." *Id.* at 7:50.

Alternatively, Ms. Pirro's relationship with President Trump, the alleged victim in this indictment, is a separate but necessary basis for disqualification. Ms. Pirro has been friends with the alleged victim for decades through her ex-husband, who used to be the President's attorney. They have spent Thanksgivings together and have travelled on his jet for weekends in Florida. *The Judge Who Speaks Trump's Language*, Washington Post (June 23, 2019) https://www.washingtonpost.com/graphics/2019/politics/jeanine-pirro-the-judge-who-speaks-trumps-language/. She has been described as "one of Trump's most ardent defenders." President Trump even pardoned Albert Pirro, Mrs. Pirro's ex-husband (they reportedly remain close), in January 2021. News outlets regularly describe their relationship as close and she has herself discussed how she has had a "million situations with him and his children." *Trump dangled administration job to Judge* Jeanine, Politico (June 7, 2018), https://www.politico.com/story/2018/06/07/jeanine-pirro-trump-white-house-630378.

Recusal in this case is especially necessary when compared to recent cases where U.S. Attorneys recused themselves from an investigation or prosecution. *See, e.g.*, Erica Orden & Nicole Hong, *Manhattan Federal Prosecutor Recuses Himself from Cohen Probe*, THE WALL STREET JOURNAL, Apr. 10, 2018, https://www.wsj.com/articles/manhattan-federal-prosecutor-recuses-himself-from-cohen-probe-1523399871 (last visited May 4, 2026); *United States v. Mangione*, 25-cr-

176-MMG (S.D.N.Y. Apr. 30, 2025) (stating in letter to the court that the U.S. Attorney for SDNY was recused from the matter); *United States v. Biden*, 23-cr-61-MN (D. De. 2023) (recusal to avoid the appearance of impropriety because the U.S. Attorney had been appointed by President Joe Biden, the defendant's father). The government may try to argue that Mr. Biden's case in particular is inapplicable here but that is incorrect. That Mr. Biden was ultimately pardoned by President Biden is notable precisely because it is an example of an Executive adhering to and respecting the processes built in our Constitutional system. The appointment of a special prosecutor to investigate and prosecute Mr. Biden preserved the integrity of the criminal legal process. His subsequent pardon—through an entirely political process rooted in the U.S. Constitution—does not change that.

In this case, U.S. Attorney Pirro, as well as Acting A.G. Blanche are significantly more conflicted than the examples above. Both were potential victims and targets in what they have described as an attempted "mass shooting." They were in the "zone of danger," in the "line of fire," and "could have been killed." Yet these same individuals are moving forward with the prosecution and investigation of Mr. Allen. The Eleventh Circuit's decision in *Untied States v. Spiker*, 649 Fed. App'x 770 (11th Cir. 2016), is instructive. There, the court concluded that it was plain error for an Assistant United States Attorney to fail to *sua sponte* recuse himself from the defendant's prosecution after the defendant "threaten[ed] and attempt[ed] to kill" him. 649 Fed. App'x at 773. *See also United States v. Sigillito*, 759 F. 3d 913, 928 (8th Cir. 2014) ("Because of the potential of perceived bias," due to a witness's familial

11

relationship with a supervising attorney at the Eastern District of Missouri's U.S. Attorney's Office, the Western District's Office "conducted the prosecution instead."); *Marshall v. Jerico, Inc.*, 446 U.S. 238, 249–50 (1980) ("A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." (citing *Bordenkircher*, 434 U.S. at 357)).

Even if the Court were to conclude there is no actual conflict of interest affecting the partiality with which they are prosecuting Mr. Allen, there is an appearance of such a conflict. On May 3, 2026, in a nationally televised interview, U.S. Attorney Pirro was confronted with the possibility that she would need to recuse herself because she was both a witness and a potential target. Betsy Klein, *Secret Service Agent "Definitely" Shot by Suspected Gunman at White House Correspondents' Dinner, US Attorney Says*, CNN (May 3, 2026), https://www.cnn.com/2026/05/03/politics/secret-service-shot-correspondents-dinner-pirro. Her answer avoided both the question and the more relevant concern raised by the interviewer about the *appearance* of impropriety that would color the perception of a fair and independent prosecution.

In addition, the close personal relationship between Ms. Pirro and President Trump has widely been reported over decades. It is well-known that they have been friends over the years and that President Trump pardoned her husband in 2020. Ms. Pirro is most famous for defending President Trump on Fox News and President Trump has often returned the favor. There is a real and widespread perception that

Ms. Pirro is a Trump loyalist. *See Jeanine Pirro bragged about helping Trump and GOP while a Fox News Host*, Washington Post (August 19, 2025), https://www.washingtonpost.com/business/2025/08/19/jeanine-pirro-trump-republicans-fox/ ("I work so hard for the President and party.").

As this case proceeds closer to trial, the country and the world will continue to wonder—how can the American justice system permit a victim to prosecute a criminal defendant in a case involving them?  Or even—how can one of the victim's closest friends prosecute the alleged perpetrator of the offense?  Given U.S. Attorney Pirro's friendship with the President and her and Acting A.G. Blanche's attendance at the event at the center of this prosecution, the law necessitates their disqualification.

### Conclusion

"'When dealing with ethical principles, it is apparent that we cannot paint with broad strokes,' as the 'lines are fine and must be so marked.'"  *United States v. Hasarafally*, 529 F.3d 125, 128 (2d Cir. 2008) (quoting *United States v. Standard Oil Co.*, 136 F. Supp. 345, 367 (S.D.N.Y. 1955) (Kaufman, J.)).  "[T]he presence of an interested prosecutor is a fundamental error that undermines the confidence in the integrity of the criminal proceeding." *Sigillito*, 759 F.3d at 928 (quotation marks omitted).  There is a fine line between disinterested prosecution and a prosecution stained with apparent conflicts of interest.  Justice and a fair trial require the former. *See Berger*, 295 U.S. at 88.  The United States of America's criminal legal system is worse with the latter.

For these reasons, and any other such reasons as the Court may determine at a hearing on this motion, Mr. Allen respectfully requests the Court exercise its inherent authority and disqualify purported victims and witnesses in this case—to include U.S. Attorney Pirro and Acting A.G. Blanche—from direct involvement in the investigation and prosecution of Mr. Allen.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
TEZIRA ABE
EUGENE OHM
Assistant Federal Public Defenders
625 Indiana Ave. N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

14