UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA, Plaintiff,

vs.

COLE TOMAS ALLEN, Defendant.

* * * * * * * * * * * * * * * *

Criminal Action No. 26-00098

Washington, D.C.
May 11, 2026
9:06 a.m.

TRANSCRIPT OF ARRAIGNMENT AND STATUS CONFERENCE
BEFORE THE HONORABLE TREVOR N. McFADDEN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: CHARLES R. JONES, ESQ.
ADAM BARRY, ESQ.
UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
601 D Street, Northwest
Washington, D.C. 20530

FOR THE DEFENDANT: TEZIRA ABE, ESQ.
EUGENE OHM, ESQ.
OFFICE OF THE FEDERAL PUBLIC DEFENDER
625 Indiana Avenue, Northwest
Suite 550
Washington, D.C. 20004

REPORTED BY: LISA EDWARDS, RDR, CRR
Official Court Reporter
United States District Court for the District of Columbia
333 Constitution Avenue, Northwest
Room 6509
Washington, D.C. 20001
(202) 354-3269

THE COURTROOM DEPUTY: Your Honor, this is Criminal Case 26-98, *United States of America versus Cole Tomas Allen*.

Counsel, please come forward to identify yourselves for the record, starting with the Government.

MR. JONES: Good morning, your Honor. Charles Jones and Adam Barry for the United States.

THE COURT: Good morning, gentlemen.

MS. ABE: Good morning, your Honor. Tezira Abe and Eugene Ohm on behalf of Mr. Allen, who is present in the courtroom and in custody.

THE COURT: Good morning, counsel.

Good morning, Mr. Allen.

THE DEFENDANT: Good morning.

THE COURT: All right. We're here for an arraignment.

Mr. Allen, will you approach with your counsel. Mr. Allen, the arraignment is directed to you, but typically your counsel responds on your behalf.

THE COURTROOM DEPUTY: May the record reflect that both counsel and the Defendant have received a copy of the indictment.

Cole Tomas Allen, in Criminal Case 26-98, in which you are charged by an indictment on Count 1, attempt to assassinate the president of the United States; Count 2,

assaulting an officer or employee of the United States with a deadly weapon; Count 3, transportation of a firearm and ammunition in interstate commerce with the intent to commit a felony; Count 4, using, carrying, brandishing and discharging a firearm during a crime of violence, do you waive the formal reading of the indictment and how do you have wish to plead?

MS. ABE: Yes, your Honor. Mr. Allen waives formal reading of the indictment and enters a plea of not guilty to all four counts as charged and asserts all of his applicable constitutional and statutory rights.

THE COURT: All right. Thank you, Ms. Abe.

You all may have a seat.

Mr. Jones, where do things stand?

MR. JONES: Thank you, your Honor.

The Government expects today to be able to send the defense a draft protective ordering governing discovery in this case. Once that is in place, the Government expects to be able to provide discovery within -- a first round of discovery within a few days of the entry of the protective order. Hopefully, that will be in place in time for us to provide discovery later this week.

THE COURT: All right. What are you requesting?

MR. JONES: At this time, your Honor, the Government's view is that setting an additional status

hearing perhaps 30 to 45 days out would be appropriate. And the Government would be requesting that time under the Speedy Trial Act be excluded between now and the next status hearing.

THE COURT: And on what basis?

MR. JONES: In the interest of justice. Your Honor, this case is only about two weeks old -- or two weeks from the event itself. And the Government is endeavoring to provide early discovery to the defense so they can review it and use it in the preparation of the defense against quite serious charges.

THE COURT: All right. Ms. Abe?

MS. ABE: May I have one moment to discuss speedy trial with Mr. Allen?

THE COURT: Sure.

(Counsel confer with the Defendant privately.)

MR. OHM: Thank you, your Honor.

So we obviously aren't in much of a position to say one way or another, not knowing how much discovery there is, how much the Government will provide in the first production. We just know that we haven't received any yet.

So I guess, acknowledging all of that, we don't oppose exclusions for a period of time.

THE COURT: And does about 45 days make sense to you?

MR. OHM: I think it does.

THE COURT: And I've seen your motion to recuse. Are you proposing that just the U.S. Attorney and the acting Attorney General would be recused or are you suggesting that their offices are as well? Just help me understand the scope of that motion.

MR. OHM: Yes, your Honor.

So I think at least for the U.S. Attorney, I think we would -- it would be easier for us for articulate our basis if we knew sort of the structure of the U.S. Attorney and how -- I mean, it seems like the U.S. Attorney is kind of involved in this investigation and then in a supervisory capacity. If it is as it seems, then we would likely be asking for the entire office to be recused.

I would say that the acting Attorney General at least in terms of his public demeanor is a little bit more just a witness and not as a prosecutor in this case. If that is as it seems, then we would not be likely asking for the entire Department of Justice to be recused.

But we --

THE COURT: That would be quite a request.

MR. OHM: It would be a heavier ask.

THE COURT: Yes.

MR. OHM: Although there seems to be procedures in place in the Department of Justice manual for that

situation.

But we do reserve the right -- we need a little bit more information first. It's obviously been quiet on the other side with regards to that information.

THE COURT: Okay. Well, just help me understand how you see this proceeding, then, because I was going to order an opposition. But I think they need to know what they're opposing.

MR. OHM: Sure. Well, I think the factual summary in terms of the involvement of the acting Attorney General and as far as the acting Attorney General in his supervisory capacity, knowing that information would be helpful in terms of what our final request as far as a remedy would be. But if, for example, he was there as a witness and he's not acting in a supervisory role at all, is only just like a spokesperson for that first weekend, then we would likely only be asking for him personally to be recused and not his entire chain of command in Main Justice.

I think with U.S. Attorney Pirro, it's likely going to be that we will be asking for the entire office just based upon what we have seen so far in terms of her role in terms of this prosecution.

THE COURT: Okay. Are you -- I guess I'm -- the factual predicate you're looking for, are you suggesting that one of them might have seen your client or -- I mean,

my impression is they were both there -- and again, just my impression -- so they were both there; and I doubt either of them saw your client or your client's actions.

Do you have a different impression?

MR. OHM: I have a limited impression because I've seen no discovery. But I don't have any basis to say that they -- that I know that they saw my client or anybody alleged to be the Defendant there.

THE COURT: Right. I mean, I can't imagine -- it would be very surprising to me if either side was suggesting they would be testifying at trial. So I guess to my mind, this is more of some sort of structural or appearance of impropriety concern rather than one of the two of you think you'd actually be calling them. But if I'm wrong about that --

MR. OHM: I think that that's probably right, your Honor. I don't have a factual basis to say that right now I believe that the acting Attorney General or the U.S. Attorney will be a fact witness for the defense. That's not the primary basis for our motion.

Right now, I think the most likely scenario is these are individuals who are alleging they are victims of Mr. Cole -- Mr. Allen's actions, and therefore we assume a lot of things about how victims feel, how victims feel throughout a process, how they might process emotions

throughout a process that might not necessarily be in their initial reaction and that it's wholly inappropriate for a victim of an alleged event like this to be the individuals who are prosecuting the case and to be the people who are making the primary prosecutorial decisions of the case.

In addition to that, the U.S. Attorney is very close friends and has a public and very close relationship with whom -- the person who everybody is identifying as the primary target of this alleged assault. And that also would normally be a disqualifying factor.

THE COURT: Right. And I get that last point. We're not doing a motion hearing right now.

MR. OHM: Yes.

THE COURT: But I want to make sure I understand and help shape the briefing. I mean, looking at these four charges, I would be very surprised if either of them would be a victim in any sort of legal sense. And I don't think you're arguing otherwise. Correct? You're arguing more kind of emotions and a sense -- and the connection between them and actual victims. Is that more what you're arguing?

MR. OHM: I mean, I feel like this is a premature conversation, your Honor. But I think I could say that safely for the Counts 2 through 4.

Count 1 is a little bit unclear, because -- just because of the way that the executive branch has presented

their charging decision and the rights that they are reserving in terms of future charges.

They have discussed potential charges for other members of the administration. They have made very clear that they believe that other members of the administration were targets. And so in that sense --

THE COURT: I see.

MR. OHM: -- that well might be coming.

THE COURT: So you're imagining a potential superseding indictment --

MR. OHM: That's correct.

THE COURT: -- where the acting Attorney General could actually be named as a victim?

MR. OHM: Sure.

THE COURT: I understand. Okay. Thank you.

Mr. Jones, how long are you looking for -- to respond?

MR. JONES: Your Honor, the Government expects to be able to respond in the ordinary course within 14 days of the filing of the motion.

I will say that it is helpful to understand to the extent possible at this stage the scope of the relief sought, because as I read the motion it was a motion to disqualify the U.S. attorney and the acting Attorney General, not to disqualify the office. It sounds like --

THE COURT: It sounds like you'd be out, too.

MR. JONES: Yes. And that's -- I think we can proceed with that understanding as essentially amending the motion. We'll address that request as well in our response.

So at this time, the Government expects to be able to respond within 14 days. I don't have that date in front of me, though.

THE COURT: It certainly would be helpful -- I mean, I've not dug into this motion. I certainly don't know all the facts. But to the extent that there are allegations that your boss or your boss's boss sees themselves as a victim, it would be helpful to have some sort of definitive view from them as to whether or not they believe they're victims. I think that would certainly add some clarity here.

MR. JONES: Understood, your Honor.

Recognizing that we're still in the early days of the investigation, the Government's going to do its best in its responsive brief to address those issues.

THE COURT: Yes. So I think you filed this on the 8th. Does that sound right, Mr. Ohm?

MR. OHM: Thursday evening.

THE COURT: I'll give you a whole extra day. I'll ask the Government to respond by the 22nd.

The 29th, does that work for you, Mr. Ohm, for a

reply?

MR. OHM: Yes, your Honor.

THE COURT: All right. So I'll look for the defense reply by then.

How about June 29th, 10:30, for a status conference? Does that work for the Government?

MR. JONES: That works, your Honor.

THE COURT: And, Mr. Ohm, does that work for defense?

MR. OHM: Yes, your Honor. Thank you.

THE COURT: We'll set this for a status conference on June 29th at 10:30.

Mr. Jones, I will be hoping we've made some substantial progress on discovery by that point. I don't necessarily toll the speedy trial clock indefinitely. So we need to keep things moving.

But I do find, A, there's a pending motion, which would toll the speedy trial clock by operation of statute. But in any event, I'll toll the speedy trial clock until June 29th, finding that the interests of justice outweigh the interests of the public and the Defendant in a speedy trial in light of the discovery that needs to go over; and therefore, I'll toll the speedy trial clock until then.

Mr. Jones, anything further for the Government?

MR. JONES: No, your Honor. Thank you.

THE COURT: And, Mr. Ohm, for defense?

MR. OHM: No, your Honor. Thank you.

THE COURT: Thanks, folks. See you next month.

(Proceedings concluded at 9:20 a.m.)

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 12th day of May, 2026.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269