**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:26-cr-00098-TNM** |
| | : | |
| **COLE TOMAS ALLEN,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER GOVERNING DISCOVERY**

The scope of the parties' dispute concerning the Government's Motion for Protective Order

Governing Discovery (hereinafter "Mot."), ECF No. 26, is narrow.   Defendant Cole Allen does

not dispute the need for a protective order in this case.   Opp. to Mot. ("Opp."), ECF No. 30, at 3–

4 ("The Court should instead enter a Protective Order that is narrowly tailored to address the

government's concerns about third-party privacy and law enforcement security interests.").   Nor

does he object to the use of a "Sensitive" category of information produced in discovery pertaining

to certain enumerated types of information like personally identifiable information that the

Government identifies and labels.   Opp. at 8–9 (the proposed order does not include a category

for "Highly Sensitive" materials, but defendant Allen does not object to that category either).

Rather, he disputes one aspect of the Government's proposed protective order—the restriction that

Covered Materials[1]  may be used by the defendant and his legal defense team "*solely* in connection

---

[1] "Covered Materials" is defined as all materials provided by the Government in discovery except
the following categories of information: (1) materials that are or become part of the public record;
(2) materials that were derived directly from the defendant or that pertain solely to him; and (3)
materials that the defense obtains by means other than discovery.   ECF No. 26-1 (Proposed
Protective Order) ¶ 10.   Although defendant Allen refers to the proposed order as a "blanket"
order repeatedly, the materials excluded from the proposed order, particularly the materials derived
directly from the defendant, comprise a significant portion of the discoverable materials in this
case.

with the defense of this case, and for no other purpose, and in connection with no other proceeding, without further order of this Court."   *Id.* at 1 (emphasis added).   Specifically, he argues that the proposed protective order is overly broad and unduly burdens and prejudices him.   Opp. at 1–2. But the defendant's arguments are conclusory and he does not identify any specific instances in which the challenged provision of the protective order would unduly burden or prejudice him in this proceeding.   Moreover, he does not contest that the nature of this case (an attempt to assassinate the President to further political or ideological objectives) and the types of information that will be provided in discovery (*e.g.*, protective measures taken by U.S. Secret Service ("USSS"), sensitive materials obtained from third parties, hotel floorplans, and CCTV footage) warrant the additional protection sought.

## I.      The Government Has Shown Good Cause for a Protective Order

"In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019).   Contrary to the defendant's arguments, the Government has articulated specific examples of harm that could arise in the absence of the proposed protective order.   For example, many of the materials that will be produced in discovery implicate the privacy and safety rights of third-party victims and witnesses. Mot. at 18.   This includes the identities of law enforcement personnel and civilian witnesses who were present at the White House Correspondents' Association Dinner (hereinafter the "Dinner") and law enforcement personnel who are investigating the defendant's criminal activity.   It also includes personal information about witnesses with pertinent information relating to the defendant

and his activities in the weeks and months leading up to his April 25, 2026 attack.   The release or dissemination of this material or its contents may result in unwanted contact with, harassment of, or harm to, witnesses and victims.   The need to protect this information from unwarranted public disclosure is especially acute in a case that has garnered significant public interest and media coverage, including unsubstantiated conspiracy theories about the details of the shooting.[2]

A protective order is also necessary to limit distribution of law enforcement sensitive information, including information from the USSS, which is the agency tasked with protecting the President of the United States and other high-ranking government officials.   This category includes not only information created by the USSS, but also information about the events leading up to the shooting and law enforcement's response.   Protecting this information from public release or dissemination is necessary to prevent the discovery materials in this case from becoming a how-to guide for the next would-be assassin.   In other recent federal cases involving notorious acts of political violence, courts have entered protective orders restricting dissemination of discovery materials and ordered defendants to use the discovery materials only in defense of each respective criminal case.   *See e.g.*, *United States v. Boelter*, Case No. 25-cr-00272, ECF No. 34 (D. Minn.) (in political assassination case, defining "Protected Material" as all information produced by the government in discovery, except matters of public record); *United States v. Routh*, Case No. 24-cr-80116, ECF No. 69 (S.D. Fla.) (in attempted political assassination case, limiting possession and use of discovery material solely for preparation of case).

---

[2] *See, e.g.*, *Many Americans think Trump assassination attempts were fake, survey finds*, WASH. POST (May 11, 2026), *available at* https://www.washingtonpost.com/business/2026/05/11/trump-assassinations-staged-conspiracy/.

Furthermore, the risk of harm to third parties is heightened here because the defendant committed his crimes with the intent to further his political message.  *See* Mot. at 20.   Allowing him to publicly disclose or disseminate Covered Materials in furtherance of his political ends would be an abuse of the discovery process.   Without the proposed protective order, the defendant faces few restrictions from using the Covered Materials to further his political objectives by disseminating them to individuals who have no interest in ensuring the fair administration of justice in this case.   The defendant should not be permitted to use Covered Materials to turn this case into a spectacle.   The harms described above are more than sufficient to satisfy the Government's burden and warrant entering the proposed protective order.  *See United States v. Smith*, 985 F. Supp. 2d 506, 547 (S.D.N.Y. 2013) ("It is . . . consistent with the proper allocation of evidentiary burdens for the [C]ourt to construct a broad 'umbrella' protective order upon a threshold showing by [the Government] of good cause.").

## II.    The Protective Order Will Not Prejudice or Unduly Burden the Defendant

Restricting the defendant's use of Covered Materials "solely" for the defense of this case does not prejudice or unduly burden him.   It simply prevents him from disseminating that material to third parties or using that material for purposes other than his defense in this case.   The defendant does not have a right to use the Covered Materials (which, as described above, already exclude certain categories of information like public records or information pertaining solely to the defendant) in any way he sees fit.   Rather, the Covered Materials are being provided to him so that he and his legal defense team can adequately prepare a defense.

The defendant argues that he would be unduly burdened because the protective order would require him to file a motion before he can show Covered Materials to a case manager to enroll

himself into a program while in pretrial detention.   Opp. at 5.   This is hardly burdensome.   If the defendant was concerned that providing Covered Materials to his case manager in this context would run afoul of the protective order, a simple email to the government and/or a brief motion to the Court would remedy that concern.   Moreover, if the materials he wanted to show the case manager pertained solely to the defendant, they would not be covered by the protective order in the first place.   *See* ECF No. 26-1 ¶ 10.

The defendant also argues that he would be unduly burdened because the protective order would prevent him from showing a police report to another inmate.   Opp. at 5–6.   This is neither an undue burden nor a valid use of Covered Materials.   If the defendant is facing harassment or threats while in custody, he has means other than showing another inmate Covered Materials to address those concerns.   Indeed, the scope of the proposed protective order is intended to restrict the defendant's ability to share Covered Materials with other inmates because of the harm that such disclosures could intentionally or unintentionally could cause third parties and the judicial process itself.

The defendant has not identified any tangible ways in which the proposed protective order would prejudice or unduly burden him.   If such circumstances arise in the future, the protective order provides a solution—the defendant can file a motion seeking to modify the protective order or authorize the use of Covered Materials in a manner not contemplated by the protective order. This requirement does not unduly burden the defendant in his defense of this case.

III.    **The Protective Order Is Not Overly Broad**

The proposed protective order properly balances the need to prevent harm to third parties and the judicial process with the public's right to access.   The defendant argues that the protective

order is overly broad and that the Government has failed to specify which discovery materials animate its concerns.  Opp. at 5.  As an initial matter, the investigation of this case is ongoing and the Government does not have a full understanding of what material will become discoverable as the investigation unfolds.   At present, the Government anticipates producing at least thousands of pages of investigative files, gigabytes of data obtained from electronic devices and accounts, dozens of hours of CCTV footage, voluminous third-party business records, and hundreds of crime scene photographs.   It would be unduly burdensome on the Government to require it to review these materials page-by-page or image-by-image to determine which items fall into one of the "Sensitive" materials categories in the protective order, or whether additional categories are needed.

Additionally, requiring the Government to enumerate a static and finite list of "Sensitive" categories while the investigation is ongoing is impractical.  If, as the investigation unfolds, the Government identifies new categories of information that warrant protection, it would be very difficult to retroactively amend the protective order to add those categories.  This case and the ongoing investigation span across the country, from California to Washington, D.C.   Thousands of pages and gigabytes of data will be produced to the defendant in discovery.   While the Government can identify some categories of information at this stage as "Sensitive," it does not have a complete picture that would allow it to know which "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself."   *Smith*, 985 F. Supp. 2d at 546 (internal citation and quotation marks omitted).

6

The Government has identified concrete and particular harms that could arise from the defendant's unfettered use of Covered Materials.   The disputed provision does not unduly burden or prejudice the defendant in his defense of *this criminal case*.   His right to the Covered Materials is premised on his status as a criminal defendant in this case, and he is not entitled to use that material in any manner he sees fit, especially because such use can directly cause harm to others including witnesses, law enforcement and security personnel, and other elected public officials. Accordingly, the Government's Motion for a Protective Order Governing Discovery should be granted and the proposed protective order, *see* ECF No. 26-1, should be entered in this case.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


*/s/ Adam P. Barry*
ADAM P. BARRY (CA Bar No. 294449)
JOCELYN BALLANTINE (CA Bar No. 208267)
CHARLES R. JONES (D.C. Bar No. 1035541)
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-6976
Charles.Jones3@usdoj.gov
Tel: (202) 252-7252
Jocelyn.Ballantine2@usdoj.gov
Tel: (202) 252-7793
Adam.Barry@usdoj.gov