UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

COLE TOMAS ALLEN,

Defendant.

Case No. 1:26-cr-00098 (TNM)

MEMORANDUM ORDER

Cole Tomas Allen stands accused of attempting to assassinate the President, among other charges. He allegedly tried to kill President Trump at a dinner attended by many other high-ranking officials. Among them were Acting Attorney General Todd Blanche and U.S. Attorney Jeanine Pirro. Pirro's Office now leads Allen's prosecution. Citing Blanche's and Pirro's presence at the alleged crime scene along with Pirro's friendship with the President, Allen moves to disqualify both officials from prosecuting his case. The Court denies that motion. In line with longstanding precedent, the Court finds that neither the officials' dinner attendance nor their statements after the fact demonstrate a conflict of interest. Nor does Pirro's friendship with the President.

I.

Some context helps explain Allen's request. The White House Correspondents' Association hosts an annual dinner for journalists, government officials, and other luminaries. *See* Mem. in Supp. Pretrial Detention ("Detention Mem.") at 2, ECF No. 10. The dinner typically occurs in late April at the Washington Hilton. *Id.* And the President usually attends. *See id.* This year was no exception. On April 25, 2026, President Donald Trump entered the

1

Washington Hilton ballroom for the dinner.  *Id.*  More than a dozen Cabinet members joined, alongside many other high-ranking officials.  *Id.*

According to the Government, Allen tracked the event through public reporting and traveled to the Washington Hilton to kill President Trump.  *Id.* at 16.  He allegedly targeted the President for political reasons.  *See id.* at 15; *see also id.* at 6–7 (reproducing a document attributed to Allen that describes his planned attack and reasons for it).  The evidence also suggests that he hoped to harm administration officials.  *Id.* at 7.  He did not, however, name particular targets.  *See id.*  After all, many senior officials typically attend the event, but they do not usually announce their attendance in advance.  Opp'n to Mot. to Disqualify ("Opp'n") at 2, ECF No. 27.

Allen allegedly put his plan in motion about half an hour after the dinner began.  Detention Mem. at 2.  He sprinted through a U.S. Secret Service security checkpoint one floor above the ballroom.  *Id.*  Once through, he ran towards stairs leading to the ballroom.  *Id.* at 2–3.  In his hands, he held a shotgun.  *Id.* at 3; *see also id.* at 3–5 (summarizing the weapons later found on Allen).  Allen fired the shotgun, injuring a Secret Service officer.  Opp'n at 2.  An officer returned fire.  Detention Mem. at 3.  Allen fell to the ground, where he was restrained and arrested.  *Id.*

Although Allen never reached the ballroom, the sound of gunfire alarmed guests.  Jeanine Pirro, the U.S. Attorney for the District of Columbia and President Trump's longtime friend, was among that crowd.  Mot. to Disqualify ("Mot.") at 7, ECF No. 24 (citing Pirro's social media post reporting as much).  As was Acting Attorney General Todd Blanche.  *Id.* at 2.  Both Pirro and Blanche spoke with media about the event in the following days.  In a press conference, Pirro accused Allen of trying to "bring down as many of the high-ranking Cabinet officials as he

could." *Id.* at 8 (citation omitted). She told reporters about her experience "in the line of fire" at the dinner, saying that she understood "what it feels like now to be hunted." *Id.* (citations omitted). Pirro also criticized Allen on social media. *See id.* at 9. For his part, Blanche said on a news show that Allen "target[ed] members of the administration," including himself in that group. *Id.* at 9–10 (citation omitted).

Meanwhile, the U.S. Attorney's Office for the District of Columbia took on Allen's case. He appeared before a magistrate judge two days after the dinner. *See* April 27, 2026, Minute Entry. The indictment charging Allen with the instant offenses followed a few weeks later. Indictment, ECF No. 22. Allen now moves to disqualify Blanche and Pirro. Mot., ECF No. 24. Though his motion focuses on these two senior officials, it also suggests that the Court should disqualify the entire U.S. Attorney's Office for the District of Columbia. *See, e.g.*, *id.* at 4–5. The motion is now ripe.

## II.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). A neutral Article III judge (accompanied by a jury of peers, where applicable) is the most fundamental protection of that right. *See, e.g.*, *United States v. Hatter*, 532 U.S. 557, 568–69 (2001). But, in criminal cases, another government official plays a key role—the prosecutor.

Unlike judges, the Attorney General and his subordinates are often "deeply interested in urging" the defendant's guilt. *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984). And "[i]n our adversary system, prosecutors are necessarily permitted to be zealous in their enforcement of the law." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). As public officials, though, they must also "seek justice to protect the innocent as well as to

convict the guilty." *United States v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981) (per curiam) (cleaned up). And a conflicted prosecutor—say one with a financial or personal stake in the case—threatens a defendant's Due Process rights no less than a biased judge. *See, e.g.*, *Young*, 481 U.S. at 810. But when does a prosecutor's stake in a case cross the line?

Several authorities point the way. Congress directed the Attorney General to "promulgate rules and regulations" that disqualify Justice Department officials from cases where their "participation may result in a personal, financial, or political conflict of interest, or the appearance thereof." 28 U.S.C. § 528. Regulations followed. No employee can "participate in a criminal investigation or prosecution if he has a personal or political relationship with . . . [a]ny person or organization substantially involved in the conduct that is the subject of the investigation or prosecution." 28 C.F.R. § 45.2(a)(1); *see id.* § 45.2(c)(2) (defining "personal relationship" as "a close and substantial connection of the type normally viewed as likely to induce partiality"). The Justice Manual and ethical rules offer more guidance. *See generally* U.S. Dep't of Just., Just. Manual (2018). Prosecutors apply these guidelines internally to make their own recusal decisions. *See, e.g.*, Mot. at 10–11 (collecting recent recusal examples). This makes sense as the Justice Department is itself motivated to ensure that justice is seen to be done.

Of course, voluntary recusals are not the only guard against conflicted prosecutors. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). A trial court, then, can and should disqualify a conflicted prosecutor. *See, e.g.*, *Heldt*, 668 F.2d at 1276. That is, however, a "drastic measure" that "a court should hesitate to impose." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (citation omitted).

4

Some examples show the "limited circumstances" in which a court will disqualify prosecutors. *Id.* A prosecutor may not "participate in a case when he has a pecuniary interest in the outcome." *Heldt*, 668 F.2d at 1275. Nor can he represent another party in a related proceeding. *Young*, 481 U.S. at 807. A bona fide bad faith allegation against the prosecutor can also warrant disqualification. *See Heldt*, 668 F.2d at 1276 (considering whether a pending civil suit alleging prosecutors' bad faith performance of duties required recusal, but finding the issue waived on appeal). As can a prosecutor's need to testify at trial. *See, e.g.*, *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985).

When deciding whether an alleged conflict requires disqualification, a court does not hold prosecutors to the same impartiality standard as judges. *Young*, 481 U.S. at 807. Nor does a court review a prosecutor's compliance with internal regulations. *See, e.g.*, *United States v. Lorenzo*, 995 F.2d 1448, 1453 (9th Cir. 1993). Those documents, after all, create no public rights. *See, e.g.*, 28 C.F.R. § 45.2(d) ("This section pertains to agency management and is not intended to create rights enforceable by private individuals or organizations."); *United States v. Blackley*, 167 F.3d 543, 548–49 (D.C. Cir. 1999) ("[V]iolations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights.").

More, when a court finds a disqualifying conflict, the remedy is narrow. The court disqualifies only the conflicted attorney—not his entire office. *See Bolden*, 353 F.3d at 879; *see also, e.g.*, *United States v. Williams*, 68 F.4th 564, 571–74 (9th Cir. 2023). That is true even for conflicted supervisory attorneys. *Cf. United States v. Sigillito*, 759 F.3d 913, 928 (8th Cir. 2014) (finding no conflict where two prosecutors who voluntarily recused from a case because of a supervisory prosecutor's conflict nevertheless participated in the case).

### III.

With those principles in mind, the Court turns to Allen's motion.  He argues that Blanche's and Pirro's presence at the alleged crime scene creates a conflict.  He also maintains that Pirro's friendship with Donald Trump disqualifies her from the case.  Finally, Allen posits that even if these problems are not true conflicts, the Court should still disqualify Blanche and Pirro to dispel the appearance of impropriety.  The Court takes each argument in turn, concluding that none justifies disqualification.

### A.

Start with Allen's primary argument.  He asks the Court to disqualify Blanche and Pirro from the case because they were present during the alleged assassination attempt.  A few kinds of conflicts can require a prosecutor's disqualification.  *See supra* Part II.  Allen suggests several, but none applies here.

*First*, Allen appeals to the policy against advocates doubling as witnesses.  *See* Mot. at 6–7, 12.  A prosecutor participating in a case generally cannot testify as a witness in that same case.  *See, e.g.*, *Prantil*, 764 F.2d at 552–53 (discussing the "advocate-witness rule" and its application in criminal cases).  But the mere fact that a prosecutor could testify as a fact witness does not require disqualification.  After all, prosecutors often have some relevant firsthand knowledge of the crime they are trying that could arguably make them witnesses.  For instance, they are usually present during interviews and grand jury testimony and could theoretically take the stand to impeach a witness who changes his story.  But absent special circumstances, an attorney can "elect in which capacity [he] intend[s] to proceed, either as counsel or as a witness."  *Id.* at 553.  Because neither side indicates that it plans to call Blanche or Pirro as a witness, the advocate-

witness rule poses no concerns.[1]  This is hardly surprising, as whatever firsthand knowledge they have about Allen's actions appears limited to what anyone in the ballroom would have heard of a commotion elsewhere in the hotel.

*Second*, Allen argues that Blanche and Pirro are disqualified because they were "victims" of the alleged crimes.  *See* Mot. at 7–10, 11–14.  Even accepting Allen's premise that the "victim" of a crime should not prosecute the alleged perpetrator, his application sweeps too far.  He presumes that because Blanche or Pirro could have been harmed or because they view themselves as victims, they are "victims" in a legal sense.  *See id.* at 7, 10.  That is wrong.

There are limits to who qualifies as a crime "victim" for disqualification purposes.  Consider *United States v. Hubbard*, 493 F. Supp. 206 (D.D.C. 1979).  There, an indictment charged the defendants with burglarizing and stealing from an Assistant U.S. Attorney's office as part of an attempt to obstruct an investigation.  *Id.* at 207.  The defendants claimed that because the prosecutors worked for the same U.S. Attorney's Office as the burglarized office occupant, the prosecutors were "themselves victims" of the charged crimes and thus conflicted.  *Id.*  The trial judge disagreed.  "[S]uch limited victimization d[id] not constitute a disqualifying interest."  *Id.*  If it were otherwise, the court reasoned, "no one employed in the criminal justice system would be free to prosecute charges of obstruction of justice."  *Id.*

---

[1]  The Government represents that it will not call either Blanche or Pirro "as a witness during any portion of this criminal proceeding."  Opp'n at 8.  Should the Government change its mind, the Court would reconsider its decision.  Reconsideration would also be appropriate if the defense claims that either official is a necessary witness.  *But see United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) ("A defendant who wishes to call a prosecutor as a witness must demonstrate a compelling and legitimate reason to do so."); *Prantil*, 764 F.2d at 551 ("[A] defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness.").

In affirming the decision, the D.C. Circuit went even further. It rejected the notion that the U.S. Attorney's Office or its prosecutors were victims at all. *Heldt*, 668 F.2d at 1275. The United States was the victim—to the extent one existed. *Id.* And the Circuit refused to impute a conflict to the prosecutors based on the crime against the United States. *Id.*; *see also United States v. Kember*, 685 F.2d 451, 458 (D.C. Cir. 1982) (same). These decisions, to be sure, present different facts from Allen's case. But the Court takes from them the general principle that not every prosecutor somehow affected by a defendant's crime is a "victim" for disqualification purposes.

Several statutes reinforce the law's limits on "victim" status in other contexts. Consider the Crime Victims' Rights Act. *See* Opp'n at 4. That law defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A). Similar examples abound. *See, e.g.*, *id.* § 3663A(a)(2) (defining "victim" as "a person directly and proximately harmed as a result of the commission of an offense"). These definitions help flesh out the line that precedent draws between disqualified "victims" and prosecutors tangentially affected by a crime.

Mapping that line onto this case, neither Blanche nor Pirro is a victim of Allen's alleged crimes. Allen stands accused of attempting to assassinate the President, assaulting a United States officer with a deadly weapon, and committing two firearm offenses. *See* Indictment, ECF No. 22. The only people "directly and proximately" harmed by those alleged crimes are the President and the wounded Secret Service officer. *See* Opp'n at 3. Add to that list, perhaps, the United States. *Cf. Heldt*, 668 F.2d at 1275. But the list stops short of Blanche and Pirro. Allen is not charged with attempting to harm either. Nor did he injure them. That they *theoretically*

could have been injured or that they were present at the alleged crime scene does not make them "victims" of the charged crimes in a legal sense.

Allen protests that the Court needs to consider not only the charged offenses, but also that Blanche and Pirro perceived themselves to be "potential targets who could have been killed." Errata ("Reply") at 6, ECF No. 29[2]; *see also id.* (arguing that the CVRA "does not limit the class of crime victim to those whose identity constitutes an element of the offense or who happened to be identified in the charging document" (quoting *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008)). True enough, Blanche and Pirro reported that they were in the "line of fire" at the dinner and could have been hurt. *See* Mot. at 11; Reply at 6.

As support for his view that uncharged threats to a prosecutor can give rise to a conflict, Allen points to *United States v. Spiker*, 649 F. App'x 770 (11th Cir. 2016) (per curiam). There, the Eleventh Circuit held that a defendant's repeated threats to and attempted assassination of the lawyer prosecuting him required the prosecutor's disqualification. *Id.* at 773–74. It did not matter that the defendant had not been charged with crimes against the prosecutor. *See id.* at 773.

Even assuming the Court found *Spiker* persuasive on its own facts, this case is different. Nothing suggests that Allen knew that either Blanche or Pirro would attend the dinner. *See* Opp'n at 5. Nor does it appear that Allen personally threatened either. Allen did allegedly identify "[a]dministration officials" as "targets, prioritized from highest-ranking to lowest." Detention Mem. at 7; *see* Reply at 6 (arguing that the Government accuses Allen of targeting high-ranking officials). Such a broad threat—not naming anyone—is unlike the personal,

---

[2] Allen filed a revised reply the day after filing his original reply. The revised version makes minor changes that do not affect the Court's reasoning. *Compare* ECF No. 28, *with* ECF No. 29. The Court nevertheless refers to the later filed version throughout this Memorandum Order.

repeated threats to the line prosecutor in *Spiker*.  *See Spiker*, 649 F. App'x at 773 (describing the prosecutor as "a particular, intended victim of Spiker's threats").  The focus on the administration at large, rather than particular individuals, dilutes the potential biasing effect.  The broad focus identifies the alleged threats as ones against the United States writ large, not particular individuals.  *Cf. Heldt*, 668 F.2d at 1275.  And any "limited victimization" Blanche and Pirro suffered as a result does "not constitute a disqualifying interest."  *Hubbard*, 493 F. Supp. at 207.  Indeed, taking Allen's target list argument seriously would require recusal of all federal prosecutors who are, like Blanche and Pirro, "administration officials."  That is clearly untenable.  *Cf. id.*[3]

*Third*, Allen gestures at Blanche's and Pirro's media statements, arguing that they show bias.  *See* Mot. at 8–10.  Allen is wrong to the extent that he suggests Blanche and Pirro had to avoid media contact.  *See id.* at 7–10.  Justice Department officials often engage with the public through the media.  *See, e.g.*, *United States v. McVeigh*, 944 F. Supp. 1478, 1483 (D. Colo. 1996) (observing that the Attorney General "publicly announced that the death penalty would be sought in any prosecution for [the Oklahoma City bombing]" and denying a disqualification request based on those statements); *cf. Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993) (acknowledging that a prosecutor's press statements "may serve a vital public function" but concluding a prosecutor is not absolutely immune for what he says).  To be sure, now that the

---

[3] *Spiker*'s persuasive value is limited for at least two more reasons.  First, the Court questions its holding.  Other courts have sensibly held that a criminal defendant cannot disqualify the prosecutor overseeing his case by threatening him.  *See, e.g.*, *Resnover v. Pearson*, 754 F. Supp. 1374, 1388–89 (N.D. Ind. 1991), *aff'd*, 965 F.2d 1453 (7th Cir. 1992).  Second, *Spiker*'s disqualification holding weighted heavily the "lead role" the targeted prosecutor played in prosecuting Spiker.  *Spiker*, 649 F. App'x at 773–74.  The senior officials here are not similarly situated.  *See id.* (suggesting that if the prosecutor "played a very minor role" in the case, the result would be different).

case has been indicted, all attorneys involved must abide by the relevant rules and caselaw regarding pre-trial publicity. *See, e.g., United States v. Trump*, 88 F.4th 990, 1005 (D.C. Cir. 2023) (collecting cases about restrictions on case-related speech by parties and counsel). This case will be tried in a court of law, not one of public opinion.

More, Allen's argument demands from Blanche and Pirro greater disinterest than the law requires. Blanche's and Pirro's statements show their interest in prosecuting him and indicate their belief in his guilt. *See* Mot. at 7–10 (excerpting statements about Allen). But "a prosecutor need not be disinterested on the issue whether a prospective defendant has committed the crime with which he is charged." *Wright*, 732 F.2d at 1056. "True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury—not the prosecutor." *Id.* Recognizing the role of the prosecutor, the Ninth Circuit held that a prosecutor's statement "that the case was 'personal'" did not demand his recusal. *United States v. Kahre*, 737 F.3d 554, 575 (9th Cir. 2013) (per curiam). So too here.

In sum, Allen has not shown that either Blanche or Pirro possess anything other than "the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged." *Wright*, 732 F.2d at 1056. Any bias they might have because they attended the dinner is "too remote to violate" the constraints the Due Process Clause imposes on prosecutors. *Marshall*, 446 U.S. at 251.

**B.**

Turn next to Allen's argument that Pirro's friendship with Trump disqualifies her. Mot. at 10, 12–13.[4] Allen cites public reporting about their close relationship, including shared

---

[4] Allen's reply appears to argue that friendship with Trump requires Blanche's disqualification, as well. *Compare* Mot. at 10, 12–13 (discussing only Trump and Pirro's friendship), *with* Reply at 10–11 (discussing Blanche's friendship with Trump). Allen's failure to raise that concern in

vacations. *Id.* at 10, 12. He also observes that the President pardoned Pirro's ex-husband and notes her past loyalty to Trump. *Id.* at 10, 12–13. This relationship does not require disqualification.

*First*, Allen mistakenly relies on Justice Department regulations that require prosecutors to recuse when their participation in a case "may result in a personal, financial, or political conflict of interest, or the appearance thereof." 28 U.S.C. § 528 (directing the Attorney General to promulgate regulations enforcing this line); *see* 28 C.F.R. § 45.2(a)(1) (operationalizing that direction). Whether Pirro complied with these regulations is not the question the Court confronts. *See supra* Part II. In any event, Pirro appears to have followed them. *See* Opp'n at 10. Pirro has no discernible financial interest in this case. As for friendship, the regulations afford "due regard" to the employee's "subjective opinion" about whether recusal is warranted. 28 C.F.R. § 45.2(c)(2). Here, Pirro has deemed recusal unnecessary and Allen's media reports do not convince the Court otherwise. *See* Opp'n at 10.

*Second*, the picture Allen paints of Pirro's friendship with Trump is unsurprising. Presidents routinely select high-ranking Justice Department officials from among their friends and supporters. Examples abound. President Kennedy appointed his brother as Attorney General. *See* James W. Hilty, *Robert Kennedy: Brother Protector* 186–96 (1997). Robert Jackson served as Solicitor General and then Attorney General under his poker buddy, Franklin Roosevelt. *See* Andrew Hamm, *Portrait of a Justice: Roberts and Barrett on the Life and Legacy of Robert Jackson*, SCOTUSblog (Nov. 3, 2017), https://perma.cc/4VT4-3D8J. Add to

---

his opening brief forfeits the argument. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."). In any event, the Court rejects the friendship argument for Blanche, for largely the same reasons it rejects the argument as to Pirro.

that list President Obama and his self-proclaimed "wing-man," Attorney General Eric Holder. Josh Gerstein, *Eric Holder: "I'm Still the President's Wingman,"* Politico44 Blog, (Apr. 4, 2013), https://perma.cc/RP6U-SNDY.  None of these relationships appear to have required recusal on matters affecting the respective President.

Indeed, even the more exacting judicial recusal standard accommodates friendships of this sort.  *See Young*, 481 U.S. at 807 (noting that courts permit prosecutors to serve in situations that would give a judge an "intolerable" conflict).  Consider Justice Scalia's guidance on the subject.  He declined to recuse from a case involving Dick Cheney, despite his friendship with the Vice President.  *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913 (2004) (Scalia, J., in chambers).  "[W]hile friendship is a ground for recusal of a Justice where the personal fortune or the personal freedom of the friend is at issue," he observed, "it has traditionally *not* been a ground for recusal where *official action* is at issue, no matter how important the official action was to the ambitions or the reputation of the Government officer."  *Id.* at 916.  His opinion also explains why a "no-friends rule" would be "utterly disabling."  *Id.* at 916–17.  Like political appointees in the Executive Branch, Justices often have "close personal relationships with the President and other officers of the Executive."  *Id.* at 916.

*Cheney*'s persuasive reasoning counsels against disqualifying Pirro here.  She acts in her official capacity as the District's U.S. Attorney.  To the extent that Trump is involved in the case, it is in his capacity as President.  After all, Allen is charged not with attempted murder but with attempted assassination of the President.  *See* 18 U.S.C. § 1751(c).  *Cheney* suggests that not even a judge under these circumstances would need to recuse.  *See* 541 U.S. at 916–17.  Allen does not rebut the Government's arguments on this front.  *See* Opp'n at 12–13.

More, the Justice Department's past § 1751(c) prosecutions counsel against disqualification. If Allen's friendship argument were correct, the Court would expect special prosecutors to handle these cases. After all, as discussed, Presidents are often close to Justice Department leaders whose offices prosecute presidential assassination attempts. So Allen's argument would likely have been available to past would-be presidential assassins. And yet the Justice Department regularly handles such prosecutions in the ordinary course. One local case is particularly instructive. The U.S. Attorney's Office for the District of Columbia prosecuted John Hinckley for attempting to assassinate President Reagan. *See Legends in the Law: Roger M. Adelman*, Washington Lawyer (June 2007) (archived by the Historical Society of the D.C. Circuit at https://dcchs.org/sb_pdf/appendix-one-adelman/). At that time, President Reagan's longtime adviser, William French Smith, served as Attorney General. *See, e.g.*, Edward J. Boyer, *William French Smith, 73 Dies; Reagan Adviser and Atty. Gen.*, Los Angeles Times (Oct. 30, 1990), https://perma.cc/SZ8H-XMSY (discussing Smith's past as Reagan's "personal lawyer" and status as "an original member of the 'kitchen cabinet' that helped guide Reagan from Hollywood to Sacramento and the White House"). Other examples show that the Justice Department routinely handles similar cases in the ordinary course. *See, e.g.*, *United States v. Duran*, 96 F.3d 1495, 1497 (D.C. Cir. 1996) (considering challenges to a conviction for attempting to assassinate President Clinton in a case brought by the D.C. U.S. Attorney's Office).

In short, Pirro's relationship with Trump is hardly an aberration. And the Court sees no reason, on this record, that she cannot fulfil her duties because of that friendship.[5]

---

[5] Because neither Blanche nor Pirro is conflicted, the Court need not linger over Allen's suggestion that the Court should also disqualify the entire U.S. Attorney's Office for the District of Columbia. *See* Mot. at 1. Allen makes no standalone argument for disqualifying the whole

## C.

Finally, the Court rejects Allen's argument that it can disqualify Pirro and Blanche to guard against the appearance of impropriety. *See, e.g.*, Reply at 4–5. Disqualification for this reason would require more than what the Court confronts.

Though murky, caselaw indicates that the appearance of impropriety alone does not justify a prosecutor's disqualification. A few courts have said as much. *See United States v. Rodella*, 59 F. Supp. 3d 1331, 1367 (D.N.M. 2014) (collecting cases); *see also Kahre*, 737 F.3d at 574. D.C. Circuit precedent also suggests something more than the appearance of impropriety is required. Once more *Heldt* offers guidance. There, the Circuit explained that an untimely objection based on "an appearance of conflict on the part of the prosecution" could succeed on appeal "only if [the defendant] was prejudiced." *Heldt*, 668 F.2d at 1277. "[P]otential prejudice" alone was insufficient. *Id.* Of course, a district court considering a disqualification request faces a slightly different question. *See id.* Actual prejudice may not exist at the outset. And by disqualifying a prosecutor who would likely taint the case, the court can protect the defendant and conserve resources.

But over-eager disqualifications pose problems too. "[P]rosecutorial decisionmaking is the special province of the Executive Branch." *Trump v. United States*, 603 U.S. 593, 620 (2024) (cleaned up). For that reason, courts do not lightly intrude on the Executive's choice of prosecutors. *See, e.g.*, *Williams*, 68 F.4th at 571–72; *Bolden*, 353 F.3d at 878–79. When faced with a conflicted prosecutor, a court's obligation to preserve the defendant's rights and the fairness of judicial proceedings compels disqualification. *See, e.g.*, *Young*, 481 U.S. at 810. But

---

Office. And even if Blanche or Pirro had a conflict, the only appropriate remedy would be to disqualify the conflicted attorney. *See supra* Part II. "Indeed, every circuit court that has reviewed an officewide disqualification has reversed." *Williams*, 68 F.4th at 572.

prophylactic disqualifications untethered to the defendant's rights risk unnecessary encroachment on a coordinate branch of Government. *See Williams*, 68 F.4th at 571–72 ("[W]e do not stamp a chancellor's foot veto over activities of coequal branches of government." (cleaned up)).

Perhaps unsurprisingly, then, the Court is unaware of any prosecutorial disqualifications to preserve the appearance of impropriety alone. Allen offers a few candidates, but none withstands scrutiny. *See* Reply at 4. In *United States v. Bolton*, the Tenth Circuit criticized the "appearance of impropriety" presented by the defendant's former counsel acting as a prosecutor in the case but ultimately affirmed the district court's decision denying disqualification. 905 F.2d 319, 322 (10th Cir. 1990). And in *United States v. Hightower*, the defendant's concern about the appearance of impropriety was secondary because it was "beyond dispute" that the prosecutor had a conflict of interest. 2025 WL 1079037, at *5 (D. Md. Apr. 10, 2025). In short, Allen's cases show that potential conflicts give courts pause, not that courts disqualify prosecutors when faced with those concerns alone.

Without on-point cases, Allen looks to "cases where U.S. Attorneys recused themselves from an investigation or prosecution." Mot. at 10. But no authority suggests that one lawyer's recusal sets a binding standard for assessing future potential conflicts. After all, prosecutors rarely explain their decisions. And the prophylactic nature of recusal guidance means a prosecutor's voluntary recusal says little about what the law requires. For that reason, courts have found no conflict when a prosecutor accidentally participates in a case from which he voluntarily recused. *See Sigillito*, 759 F.3d at 928.

Having surveyed the caselaw and considered Allen's arguments, the Court concludes that disqualification to avoid the appearance of impropriety alone is inappropriate. At the very least,

16

some showing that prejudice is likely to follow would be necessary.  *See Rodella*, 59 F. Supp. 3d at 1367; *Kahre*, 737 F.3d at 574.  Allen has not made that showing.  And the Court is unpersuaded in the first instance that there is any apparent impropriety.

Allen's concerns are mostly a symptom of the charged crime.  He stands accused of attempting to kill the President by an agency that assists the President with his "constitutional duty to 'take Care that the Laws be faithfully executed.'"  *Trump*, 603 U.S. at 620 (quoting U.S. Const., art. II § 3).  The Court appreciates that this may give Allen pause.  But the Court does not see any impropriety in the Justice Department fulfilling its role.  Nor is there, for example, any evidence that Blanche's and Pirro's experiences colored the indictment decision.  *Cf. Lorenzo*, 995 F.2d at 1453 (looking at the same to evaluate prejudice).

More, Blanche's and Pirro's roles in this case assuage Allen's specific concerns.  Their remote supervisory status undermines the impropriety claim.  *See* Opp'n at 8 n.3 (explaining that neither Blanche nor Pirro plan to act as trial attorneys here).  It also undermines any claimed prejudice because line prosecutors will make most decisions.  Allen's fears that they will act inappropriately trade on his mistaken view that prosecutors must act completely impartially.  That, the Court has explained, is a judge's duty, not a prosecutor's.  *See Wright*, 732 F.2d at 1056.  Should Allen develop concerns about biased treatment, the Court is confident that his attorneys will raise them.

### IV.

Allen is charged with attempting to assassinate the President of the United States at a dinner many high-ranking officials attended.  The Court is not blind to the unusual position of the Justice Department officials who attended the dinner and now oversee Allen's prosecution.  Nor is it blind to its own responsibility to act as a neutral arbiter.

17

Mindful of the different role a prosecutor plays as compared to a judge, the Court sees no justification for disqualifying the two senior officials Allen questions.  They are unlikely to be trial witnesses, nor do they meet the legal definition of victims.  Their statements about the investigation and friendships with the President likewise present no basis for screening them from the case.

The Court thus **ORDERS** that Allen's [24] Motion to Disqualify is **DENIED**.  **SO ORDERED**.


Dated: June 22, 2026                                          TREVOR N. McFADDEN, U.S.D.J.