**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 26-CR-98-TNM** |
| **v.** | : | |
| **COLE TOMAS ALLEN,** | : | |
| **Defendant.** | : | |

# DEFENDANT'S MOTION FOR SCHEDULING ORDER

Cole Tomas Allen, through his attorneys, respectfully requests that this Honorable Court enter a Scheduling Order to ensure that the parties are prepared to set a meaningful trial date in this case.

On April 27, 2026, Mr. Allen was arrested in connection with shots allegedly fired at the Washington Hilton on Connecticut Avenue, N.W. in Washington, D.C. He was presented before a magistrate judge of this court and preventatively detained. On May 5, 2026, a grand jury indicted Mr. Allen in a four-count indictment alleging violations under 18 U.S.C. § 1751(c) (attempted assassination); 18 U.S.C. §§ 111(a) and (b), (assaulting a federal officer); and related weapons offenses. On May 11, 2026, Mr. Allen entered pleas of not guilty to every count.

On May 20, 2026, the Government filed a Motion for a Protective Order that was largely unopposed by the defense to facilitate the disclosure of discovery. ECF 26. On June 29, 2026, the Government delivered its first discovery production that consisted of extractions from a phone and computers supposedly belonging to Mr. Allen. On July 14, 2026, the Government produced a second round of discovery which included video from the ambulance from the night of the incident, a Samsung

SM extraction, a Google subpoena return, and witness JL's grand jury subpoena return. On July 21, 2026, the Government produced a third round of discovery, which included a significant number of native images, data and FBI reports. This production included several initial forensic reports: Ballistics and Toolmark Reports; Metallurgy Report; FTIR analysis; Trace Evidence Analysis of fragments and fibers; Lab Report analysis of Trace, hair and fibers; fingerprint reports; and DNA reports.

On August 19, 2026, the Defense requested the full case files for the various disclosed forensic examinations. At the subsequent status hearing on August 20, 2026, the Defense reiterated the need to review all of the discovery relating to the forensic material to be able to convey to the Court when it would be ready for trial.

On October 1, 2026, the government provided the reports associated with the forensic examinations. Given the complexity of the subject matter, the Defense retained a forensic science expert to review the materials to advise counsel on what is necessary to properly prepare for Mr. Allen's defense at trial.

It is counsels' understanding that the materials provided to date by the Government do not indicate or even suggest the full scope of the opinions or conclusions which can be drawn from the testing conducted by the FBI. Should the Government be limited to eliciting only the factual information contained in the discovery provided, the Defense does not anticipate the need for testifying experts at a trial. However, there is a strong likelihood of pre-trial *Daubert*/FRE 702 litigation over several of the more rarely utilized forensic disciplines and associated opinions included within the conclusory reports that have been provided. The Defense's

forensic consultant has also advised that the Government may attempt to elicit opinions and conclusions far beyond what is indicated in the materials regarding the examinations and conclusory opinions thus far provided based on prior experience in other Federal cases associated with these forensic disciplines.

As the Court is aware, the Government's case may well turn on the reliability of its presentation of forensic evidence. At past hearings, the Government has confidently announced its intent to prove that Mr. Allen fired a shotgun shell that struck a Secret Service Agent; the alleged contact was not depicted by video footage that captured the incident. Indeed, the video footage shows multiple individuals with weapons drawn and no individuals acting in a manner consistent with being shot. The physical evidence collected at the scene is far from clear as to what may exactly have occurred at the Washington Hilton event.

The Government will have to conclusively prove that despite the video evidence, Mr. Allen intentionally fired a weapon, intentionally fired a weapon with the intent to direct force at a particular agent, and/or that a projectile from his weapon struck and injured a federal agent. *See* 18 U.S.C. § 111(b). To do so will require opinions based on controversial science drawn from conclusions from facts that do not appear to exist in this case. Without a full understanding of these opinions and conclusions and the bases for these opinions and conclusions, the Defense is concerned that the Government's Expert Notice, when it comes, will require the Defense to seek and schedule testifying experts, potentially jeopardizing a scheduled trial date.

To that end, the Defense proposes that the Court order the Government to provide Expert Notice in compliance with Fed. R. Crim. P. 16(a)(1)(G) at a date agreeable to both parties; and that the Defense be required to provide its own Notice on a date 45 days after receipt of the Government's Notice, after which a Motions Schedule and a trial date will follow.

Respectfully Submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

TEZIRA ABE
SUZANNE ZAKARIA
EUGENE OHM
Assistant Federal Public Defenders
625 Indiana Ave. N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500